RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 13a0345p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

In re: STEVE A. MCKENZIE,

*Debtor.*

_____

GRANT, KONVALINKA & HARRISON, P.C.,

*Appellant*,

*v.*

C. KENNETH STILL,

*Appellee.*

Nos. 12-6374/6375

Appeal from the United States District Court
for the Eastern District of Tennessee at Chattanooga.
Nos: 1:11-cv-00192; 1:11-cv-00274; 1:12-cv-00025.
Curtis L. Collier, Chief District Judge.

Argued: October 8, 2013

Decided and Filed: December 17, 2013

Before: BOGGS, CLAY, and GILMAN, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Harry R. Cash, GRANT, KONVALINKA & HARRISON, P.C., Chattanooga, Tennessee, for Appellant. Jerrold D. Farinash, KENNEDY, KOONTZ & FARINASH, Chattanooga, Tennessee, for Appellee. **ON BRIEF:** Harry R. Cash, John P. Konvalinka, GRANT, KONVALINKA & HARRISON, P.C., Chattanooga, Tennessee, for Appellant. Jerrold D. Farinash, KENNEDY, KOONTZ & FARINASH, Chattanooga, Tennessee, for Appellee.

1

---

**OPINION**

---

RONALD LEE GILMAN, Circuit Judge.  Grant, Konvalinka & Harrison, P.C. (GKH), a Tennessee-based law firm, seeks relief from the automatic stay of adversary proceedings resulting from the bankruptcy of one of its former clients, Steve A. McKenzie.  GKH contends that it is entitled to an equity interest in certain assets that McKenzie pledged to the firm shortly before he was placed into bankruptcy.  The bankruptcy trustee, C. Kenneth Still (Trustee), opposes GKH's motion for relief from the automatic stay on the basis that the pledges constitute preferential transfers.

After conducting multiple hearings on the matter, the bankruptcy court issued orders denying in part GKH's motion for relief from the stay.  The district court affirmed.  For the reasons set forth below, we **AFFIRM** the judgment of the district court.  In the course of doing so, we resolve the following two issues of first impression in the Sixth Circuit:  (1) which party bears the burden of establishing the validity of a creditor's security interest in the debtor's property, and (2) whether a trustee may use his hypothetical lien-creditor status and avoidance powers to oppose a motion for relief from the automatic stay after the expiration of the two-year statutory limitation on avoidance actions under 11 U.S.C. § 546(a)(1)(A).

**I.  BACKGROUND**

**A.     Factual background**

McKenzie was a prominent entrepreneur in Cleveland, Tennessee.  A group of McKenzie's creditors filed an involuntary bankruptcy petition against him under Chapter 7 of the Bankruptcy Code in November 2008.  When McKenzie filed a voluntary Chapter 11 petition the following month, the bankruptcy cases were consolidated.  The bankruptcy court approved the appointment of a Chapter 11 trustee in February 2009, and the case was converted to a Chapter 7 bankruptcy in June 2010.

A flurry of lawsuits between GKH and the Trustee followed. Indeed, this is not the first appeal by GKH involving the McKenzie bankruptcy. *See In re McKenzie*, 716 F.3d 404 (6th Cir. 2013). GKH alleged in that appeal that the Trustee and his attorneys maliciously prosecuted several lawsuits against GKH. *See id.* at 408-09 (discussing the facts of the case). This court resolved the prior appeal in the Trustee's favor. *See id.* at 409 (affirming the bankruptcy court's dismissal of GKH's adversary complaints against the Trustee and his attorneys).

Several weeks before the Chapter 7 involuntary bankruptcy petition was filed against him, McKenzie executed a promissory note and a pledge agreement in favor of GKH for the purpose of securing legal fees owed to the law firm. The pledge agreement listed almost two dozen entities in which McKenzie held an ownership interest. McKenzie later executed an amended pledge agreement listing several additional entities. These entities ranged from a so-called "auto mall" to a farm.

**B.     Procedural history**

GKH initially filed a proof of claim for $406,829 against McKenzie's bankruptcy estate in April 2009. The proof of claim listed the basis for the claim as "[s]ervices performed" and described the collateral as "Real Estate." McKenzie objected to the proof of claim in February 2011 because GKH had failed to attach certain documents to its claim.

GKH filed an amended proof of claim for $750,000 shortly after McKenzie's objection. In its amended claim, GKH described the collateral as "Real Estate" and "Other." GKH subsequently filed a motion for relief from the automatic stay. The Trustee opposed the motion on the ground that the equity interests pledged by McKenzie to GKH constituted preferential transfers.

Two hearings were held on GKH's motion for relief from the automatic stay in May 2011. Three days after the second hearing, the bankruptcy court issued an order granting in part and denying in part GKH's motion for relief from the automatic stay.

In its order, the bankruptcy court granted relief from the automatic stay with respect to certain real estate collateral previously pledged by McKenzie, but denied relief as to the pledged equity interests and reserved ruling on several other issues. Another evidentiary hearing was held in October 2011, after which the bankruptcy court issued a second order denying the remainder of GKH's motion for relief.

The second order from the bankruptcy court addressed (1) whether McKenzie validly conveyed his equity interests in certain entities, including Cleveland Auto Mall, LLC (CAM), to GKH, (2) whether the Trustee could use his hypothetical lien-creditor status and avoidance powers defensively to defeat GKH's security interest even though the two-year statute of limitations for commencing avoidance actions had expired in January 2011, and (3) whether the statute of limitations should be equitably tolled because of GKH's conduct during the McKenzie bankruptcy. All three issues were resolved in the Trustee's favor.

As to the first issue, the bankruptcy court concluded that, among other things, GKH failed to carry its burden of showing that it possessed a valid security interest in CAM. The court resolved the second issue by holding that the Trustee was not bound by the statute of limitations and could therefore use his avoidance powers defensively after the expiration of the limitations period. Finally, with respect to equitable tolling, the bankruptcy court held in the alternative that tolling was warranted because of GKH's misleading conduct during the pendency of the case.

GKH appealed both bankruptcy court orders to the district court. The district court affirmed in a memorandum opinion. This timely appeal by GKH followed.

GKH contends on appeal that the bankruptcy court erred in (1) extending the automatic stay for more than 60 days after GKH filed its motion for relief from the automatic stay, (2) requiring GKH to establish the validity of its security interest in the pledged equity interests, (3) concluding that a valid transfer of McKenzie's interest in CAM had not occurred, (4) allowing the Trustee to use his hypothetical lien-creditor status and avoidance powers defensively despite the expiration of the statute of

limitations, and (5) equitably tolling the statute of limitations. The Trustee, for his part, urges us to blanketly affirm the judgments of both lower courts in all respects.

## II.  ANALYSIS

### A.    Standard of review

In bankruptcy appeals, findings of fact are upheld unless they are clearly erroneous, *In re Federated Dep't Stores, Inc.*, 328 F.3d 829, 832 (6th Cir. 2003), whereas legal conclusions are reviewed de novo. *Id.* A bankruptcy court's use of its equitable powers, on the other hand, is reviewed under the abuse-of-discretion standard. *In re Nichols*, 440 F.3d 850, 856 (6th Cir. 2006); *In re Maughan*, 340 F.3d 337, 344 (6th Cir. 2003).

### B.    The bankruptcy court did not err in extending the automatic stay

GKH contends that the bankruptcy court erred in extending the automatic stay for more than 60 days after GKH filed its motion for relief from the stay. In the absence of a contrary court ruling, the automatic stay terminates 60 days after a creditor's motion for relief. *See* 11 U.S.C. § 362(e)(2). GKH filed its motion on March 7, 2011. The bankruptcy court, in its April 4, 2011 order granting the Trustee's motion to extend the automatic stay, referenced the "preliminary hearing required by 11 U.S.C. § 362(e)(1)" despite not conducting such a hearing. GKH seizes on the quoted language to argue that the bankruptcy court should have held a preliminary hearing before it found good cause for extending the automatic stay beyond 60 days.

The fatal flaw in GKH's argument is that no preliminary hearing was required because McKenzie is an individual debtor. *See* 11 U.S.C. § 362(e)(2) ("Notwithstanding paragraph (1), in a case . . . *in which the debtor is an individual*, the stay under subsection (a) shall terminate on the date that is 60 days after a request is made by a party in interest under subsection (d), unless . . . such 60-day period is extended . . . by the court for such specific period of time as the court finds is required for good cause, as described in findings made by the court.") (emphasis added). Section 362(e)(2)—and not § 362(e)(1)—is therefore the applicable provision in this case despite the bankruptcy

court's mistaken reference to § 362(e)(1). Moreover, § 362(e)(2), unlike § 362(e)(1), does not require a preliminary hearing. *Compare* 11 U.S.C. § 362(e)(1) ("A hearing under this subsection may be a preliminary hearing . . . ."), *with* 11 U.S.C. § 362(e)(2) (containing no preliminary hearing requirement). The bankruptcy court, in sum, did not err in failing to hold a preliminary hearing on GKH's motion for relief.

GKH next argues that the bankruptcy court erred in finding good cause for extending the automatic stay beyond 60 days. In its order extending the stay, the bankruptcy court concluded that "issues related to the employment of counsel for the [T]rustee should be resolved before proceeding to the merits of the Motion for Relief." These issues, in the bankruptcy court's view, constituted "compelling circumstances . . . which require that the final hearing on the Motion for Relief be held beyond 60 days as required by 11 U.S.C. § 362(e)(2) . . . ."

We agree. The Trustee had little choice but to hire new counsel to defend against GKH's motion for relief from the automatic stay because GKH had earlier sued the Trustee and his attorneys for malicious prosecution. Extending the automatic stay so that the Trustee would have adequate time to retain new counsel and prepare for the hearing on GKH's motion did not constitute an abuse of discretion by the bankruptcy court. *See In re M.J. Waterman & Assocs., Inc.*, 227 F.3d 604, 608 (6th Cir. 2000) (explaining that an abuse of discretion occurs only if no reasonable person could agree with the bankruptcy court's decision).

**C.    The bankruptcy court properly required GKH to establish the validity of its security interest in the pledged collateral**

A bankruptcy court may grant a motion for relief from the automatic stay if, among other things, the debtor "does not have an equity [interest] in [the] property." 11 U.S.C. § 362(d)(2)(A). GKH relies on a stipulation between the parties—namely, "to the extent [that] GKH has a valid security interest in any property of the debtor, the parties stipulate that the debtor does not have any equity in such property"—as conclusive evidence that McKenzie lacked an equity interest in the collateral. The bankruptcy court, however, required GKH to establish the validity of its security interest

in the pledged property.  GKH contends that the bankruptcy court erred in placing this burden of proof on GKH.

Whether a creditor has the burden of establishing the validity of its security interest is an issue of first impression in the Sixth Circuit.  The parties themselves have cited no circuit or district court decisions from other jurisdictions on point, but numerous bankruptcy courts in other jurisdictions have imposed this requirement on creditors seeking relief under 11 U.S.C. § 362(d)(2).  *See, e.g.*, *In re Elmira Litho, Inc.*, 174 B.R. 892, 900 (Bankr. S.D.N.Y. 1994) (noting that "[t]he secured creditor who seeks relief from the automatic stay under § 362(d)(2) must demonstrate . . . that its claim is secured by a valid, perfected lien in property of the estate"); *In re Cabrillo*, 101 B.R. 443, 450-51 (Bankr. E.D. Pa. 1989) (denying relief under 11 U.S.C. § 362(d)(2) because the creditor failed to prove that it held a valid security interest in the collateral); *In re Playa Dev. Corp.*, 68 B.R. 549, 553 (Bankr. W.D. Tex. 1986) ("In considering a motion for relief from the stay, it is necessary to observe that the moving party has the burden of establishing the validity and perfection of its security interest . . . ."); *In re Dahlquist*, 34 B.R. 476, 481 (Bankr. D.S.D. 1983) ("[A] creditor must establish the validity and perfection of its security interest . . . and must carry the ultimate burden of proof with respect to equity."); *United Cos. Fin. Corp. v. Brantley*, 6 B.R. 178, 184 (Bankr. N.D. Fla. 1980) (explaining that a creditor must "establish the validity and perfection of its security interest . . . and . . . must carry the ultimate burden of proof with respect to equity").  *But see In re Allstar Bldg. Prods., Inc.*, 834 F.2d 898, 899-900 (11th Cir. 1987) (en banc) (per curiam) (noting that the debtor bears the burden of establishing that a creditor has failed to perfect its security interest).

The bankruptcy court, in imposing such a requirement on GKH in this case, explained that "[i]mplicit in a determination that a party is entitled to lift the stay . . . is a determination that the party is a creditor who has a lien against [the] property of the debtor and that the lien existed prepetition."  Contrary to GKH's argument, the parties' stipulation does not help its cause.  The stipulation is conditional.  It states only that McKenzie lacks equity "to the extent [that] GKH has a valid security interest."  Thus,

if GKH does not possess a valid security interest, then the stipulation establishes nothing at all.

GKH does not dispute that it would, in the absence of the stipulation, bear the burden of proof on McKenzie's lack of equity in the pledged collateral. It instead contends that the Trustee has the burden of proof on all other issues, including the validity (or invalidity) of GKH's security interest. In advocating this position, GKH relies on the following language set forth in 11 U.S.C. § 362(g):

> (g) In any hearing under subsection (d) or (e) of this section concerning relief from the stay of any act under subsection (a) of this section —
>
>> (1) the party requesting such relief has the burden of proof on the issue of the debtor's equity in [the] property; and
>>
>> (2) the party opposing such relief has the burden of proof on all other issues.

GKH argues that the plain language of § 362(g) does not permit the bankruptcy court to alter the parties' burdens.

Although this plain-language argument by GKH has some surface appeal, the argument ignores the fact that the validity of a creditor's security interest is often determinative of the debtor's lack of equity in the property, and consequently affects the ultimate issue—whether the bankruptcy court should terminate the automatic stay. As the bankruptcy court in *United Companies* explained, "leave to foreclose should not be granted to any mortgagee who has not perfected its mortgage," and "it would be an abuse of discretion to permit foreclosure . . . *when the perfection and validity of the security interest* sought to be foreclosed cannot be established." 6 B.R. at 184 (emphasis added). This view appears to be the majority view among bankruptcy courts that have considered the issue.

The only case cited by GKH for the minority view, *In re Johnson*, 422 B.R. 183 (Bankr. E.D. Ark. 2010), simply states its conclusion without any meaningful analysis. *See id.* at 185 (declaring that "[t]he Trustee had the initial burden of proof to show that

the creditor did not have a perfected security interest"). GKH further argues in its reply brief that the validity of its security interest was established by the filing of an amended proof of claim in February 2011 because a proof of claim is deemed allowed unless an interested party objects. 11 U.S.C. § 502(a); Fed. R. Bankr. P. 3001(f). But this argument overlooks an important point—namely, that this appeal does not involve a proof of claim, but rather a motion for relief from the automatic stay.

Finally, requiring a creditor to establish the validity of its security interest makes sense as a matter of sound judicial policy because the creditor will likely be in the best position to show that its interest is valid. *See* Frank R. Kennedy, *The Automatic Stay in Bankruptcy,* 11 U. Mich. J.L. Reform 175, 227 (1978) (observing that the "facts providing a justification for modifying the stay will ordinarily be more easily provable by the creditor than disprovable by the [debtor]") (internal quotation marks omitted); *cf. In re Nutri*Bevco, Inc.*, 117 B.R. 771, 784 (Bankr. S.D.N.Y. 1990) (explaining in the context of a scheduled claim that the "creditor is in the best position to determine if its claim is accurately listed"). The bankruptcy court therefore properly required GKH to establish the validity of its security interest in the pledged collateral.

**D.     The bankruptcy court correctly concluded that GKH failed to establish a valid transfer of McKenzie's ownership interest in CAM**

GKH next contends that the bankruptcy court erred in concluding that McKenzie failed to effectuate a valid transfer of his ownership interest in CAM. After examining the operating agreement for CAM, the bankruptcy court noted that § 8.1(a) of the agreement prohibits transfers of ownership interests without the prior written consent of the Board. The operating agreement further provides that transfers in violation of the agreement are "null and void and shall not operate to transfer any interest or title to the Membership Interest to the purported transferee."

CAM had two members at the time of the putative transfer of McKenzie's ownership interest in CAM to GKH: McKenzie and Nelson Bowers. GKH produced an undated consent form signed by Bowers, wherein he "consents . . . to the grant to [GKH] of a security interest in the ownership interest of Steve A. McKenzie in

Cleveland Auto Mall, LLC by pledge agreement dated October 13, 2008 and amended October 29, 2008." Bowers testified that his written consent to the transfer was effective "as of October 13 and October 24, [sic] 2008." He could not recall, however, whether he executed the consent form before or after McKenzie attempted to transfer his ownership interest to GKH.

The operating agreement expressly requires Bowers's prior written consent. In the absence of such consent, any transfer is null and void under the terms of the agreement. Although GKH argues that Bowers has no objection to the transfer, GKH fails to offer any support for its argument that Bowers's undated ratification cures GKH's failure to provide proof of Bowers's pretransfer written consent. Indeed, the language of the operating agreement squarely forecloses GKH's argument. The bankruptcy court therefore correctly concluded that GKH failed to establish a valid transfer of McKenzie's ownership interest in CAM.

**E.    The bankruptcy court properly allowed the Trustee to use his avoidance powers defensively to defeat GKH's motion for relief**

Because a bankruptcy trustee acquires the status of a hypothetical lien creditor, a trustee may affirmatively set aside certain liens on a debtor's property. 11 U.S.C. § 547(b). A trustee, however, must take such action no later than two years after the bankruptcy court enters an order for relief. *Id.* § 546(a)(1)(A). In this case, the statutory limitation on the filing of avoidance actions expired in January 2011. GKH asserts that the bankruptcy court erred when it allowed the Trustee to use his avoidance powers defensively in December 2011 to defeat GKH's motion for relief, even though the time for filing avoidance actions had expired 11 months earlier.

Section 502(d) of the Bankruptcy Code "requires disallowance of a claim of a transferee of a voidable transfer *in toto* if the transferee has not paid the amount or turned over the property received as required under the sections under which the transferee's liability arises." 4 *Collier on Bankruptcy* ¶ 502.05 (16th ed. 2011). This court has not previously addressed whether a trustee may use his avoidance powers defensively following the expiration of the statutory limitation on filing avoidance

actions. The majority view among bankruptcy courts is that a trustee may exercise his avoidance powers in such instances. *See In re McLean Indus., Inc.*, 196 B.R. 670, 676 (Bankr. S.D.N.Y. 1996) (explaining that "the majority [of courts] have permitted [the] defensive use of [s]ection 502(d)"). We have also found one circuit court that has adopted this view. *See In re Am. W. Airlines, Inc.*, 217 F.3d 1161, 1168 (9th Cir. 2000) ("We therefore . . . conclude that the limitations period in § 546 does not apply to § 502(d)."). To our knowledge, no circuit or district court has held to the contrary.

GKH urges us to adopt the minority position, which prohibits trustees from using their avoidance powers defensively after the expiration of the statute of limitations. *See, e.g.*, *In re Mktg. Assocs. of Am., Inc.*, 122 B.R. 367, 370 (Bankr. E.D. Mo. 1991) (applying the two-year statute of limitations to the defensive use of a trustee's avoidance powers). Quoting heavily from *Marketing Associates*, GKH argues that the bankruptcy court's decision to allow the Trustee to use his avoidance powers defensively in this case results in a "procedural windfall" to the Trustee. GKH also attempts to distinguish the cases relied upon by the bankruptcy court and the Trustee on the ground that those cases involved claim objections rather than opposition to motions for relief from the automatic stay, but GKH fails to explain why this distinction matters.

The minority view advocated by GKH, moreover, suffers from several flaws. First, it fails to account for the distinction between avoidance actions, in which a trustee seeks affirmative relief from the bankruptcy court, and defenses, in which a trustee seeks no affirmative relief. *See Am. W. Airlines*, 217 F.3d at 1167 (noting the distinction). Although GKH characterizes the Trustee's defensive use of his avoidance powers as a "procedural windfall," the Trustee in fact receives no such windfall. He is instead "limited under . . . § 502(d) to offsetting the claim asserted by the creditor." *In re Mid Atl. Fund, Inc.*, 60 B.R. 604, 611 (Bankr. S.D.N.Y. 1986). Section 502(d) does not permit any additional recovery by the trustee. *See id.* (explaining that "[w]hen . . . the creditor also receive[s] a preference beyond that amount, the trustee remains unable to recover the additional preference without the commencement of an action or adversary proceeding, which commencement is barred by the statute of limitations").

The key case relied upon by GKH for the minority view, *Marketing Associates*, also distorts the prior caselaw on the subject.  In its analysis, the court in *Marketing Associates* asserts that the bankruptcy court in *Mid Atlantic Fund* "allowed the trustee to prosecute his preference action."  *Marketing Assocs.*, 122 B.R. at 370.  But the procedural history of *Mid Atlantic Fund* belies this assertion.  *See Mid Atl. Fund*, 60 B.R. at 607 (explaining that "the Trustee is not commencing an action or proceeding but [is] merely relying on Code § 502(d) to cause the disallowance of the Creditors' claim") (footnote omitted).

The holding in *Marketing Associates* suffers from an additional flaw in that it overlooks the text of § 502(d) and persuasive pre-Bankruptcy Code precedent.  Section 502(d) does not refer to § 546(a)(1)(A)'s two-year statute of limitations, nor does § 502(d) contain a limitations period of its own.  *See* 11 U.S.C. § 502(d); *see also McLean Indus.*, 196 B.R. at 676-77 ("'If such a limitations period on claim objections under section 502(d) was intended by Congress, it easily could have included a reference to section 502(d) in section 546(a).'") (quoting *In re Stoecker*, 143 B.R. 118, 132 (Bankr. N.D. Ill. 1992)).  At bottom, nothing in the text of § 502(d) prevents a trustee from using his avoidance powers defensively after the expiration of the statute of limitations set forth in § 546(a)(1)(A).

Moreover, two circuit-court decisions construing the predecessor to § 502(d) permitted trustees to object to claims after the limitations period had run.  *See In re Meredosia Harbor & Fleeting Serv., Inc.*, 545 F.2d 583, 590 (7th Cir. 1976) (explaining that the trustee's defense "was in the nature of recoupment and therefore not barred" by the statute of limitations); *In re Cushman Bakery*, 526 F.2d 23, 36 (1st Cir. 1975) ("[T]here are no affirmative reasons for holding that [the statute of limitations] applies to objections to the allowance of a claim.").  The outcome in these circuit-court decisions also comports with the general principle that limitations periods do not apply to defenses.  *See In re KF Dairies, Inc.*, 143 B.R. 734, 737-38 (B.A.P. 9th Cir. 1992) (explaining that "statutory time-bars are inapplicable to matters of defense, where no affirmative relief is sought").

Finally, the majority view, unlike the minority view, furthers one of the central purposes of the Bankruptcy Code—to ensure the "equality of distribution among creditors of the debtor." *Union Bank v. Wolas*, 502 U.S. 151, 161 (1991) (internal quotation marks omitted). Accordingly, we conclude that the bankruptcy court properly adopted the majority view in holding that the Trustee was entitled to use his avoidance powers defensively without regard to the two-year statute of limitations under 11 U.S.C. § 546(a)(1)(A).

## F.     We need not decide whether equitable tolling was warranted

GKH's final contention is that the bankruptcy court erred in holding in the alternative that the statute of limitations should be equitably tolled due to GKH's conduct during the proceedings. In the bankruptcy court's view, GKH "made affirmative representations in the record which contradict its . . . position that it has a security interest" in the collateral pledged by McKenzie. The bankruptcy court also noted that GKH repeatedly failed to disclose its security interest in certain entities despite several opportunities to do so during the pendency of the case. It further observed that GKH did not expressly assert its security interest in the pledged collateral until after the statute of limitations expired. These factors led the bankruptcy court to toll the statute of limitations. But because we have concluded that the bankruptcy court properly allowed the Trustee to use his avoidance powers defensively after the expiration of the statute of limitations, we need not decide whether the bankruptcy court's alternative holding constitutes reversible error. *See Ashtabula Cnty. Med. Ctr. v. Thompson*, 352 F.3d 1090, 1094 (6th Cir. 2003) (declining to address an alternative holding because the main holding was affirmed).

## III.  CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court.