IN RE : MARGAUX TEXAS
VENTURES, INC.,
Debtor.

John H. Litzler, Chapter 7 Trustee
for Margaux Texas Ventures,
Inc., Plaintiff,

v.

Suzan Cooper, Defendant.

CASE NO. 10–31786–SGJ–7
Adversary No. 13–03221

United States Bankruptcy Court,
N.D. Texas, Dallas Division.

Signed May 22, 2014

■■■■■■■■■■■

Kathryn Gillian Reid, Rochelle McCullough LLP, Dallas, TX, for Plaintiff.

Doug D. Skierski, Skierski Law PLLC, Dallas, TX, for Defendant.

### MEMORANDUM OPINION AND ORDER PARTIALLY GRANTING AND PARTIALLY DENYING THE MOTION TO DISMISS FILED BY DEFENDANT, SUZAN COOPER [DE # 5]

STACEY G. JERNIGAN, United States Bankruptcy Judge

#### A. Introduction

This Memorandum Opinion and Order primarily addresses the following question: Is a claim objection, brought pursuant to section 502(d) of the Bankruptcy Code (i.e., premised upon the notion that the claimant received an avoidable/recoverable transfer of property that has not yet been returned), **time-barred** if not brought within the same time frame required for an avoidance action, under section 546 of the Bankruptcy Code? Restated, if a successfully asserted affirmative defense of statute of limitations precludes a trustee from avoiding or recovering a transfer, does this also preclude the transferee's claim from being disallowed under section 502(d)? These questions (riveting to bankruptcy practitioners, but likely no others) now arise in the context of a six-count adversary proceeding (not a mere contest-ed claim objection). Thus, there are other pending issues but, at bottom, these are the predominant questions.

Now pending before the court is a Motion to Dismiss and Memorandum in Support Thereof (the "Motion to Dismiss"), filed by a creditor, Suzan Cooper (the "Defendant" or "Ms. Cooper"), in the above-referenced adversary proceeding (the "Adversary Proceeding"), regarding the Trustee's Original Adversary Complaint Against Claimant Suzan Cooper (the "Complaint"),[1] filed on October 14, 2013, by John H. Litzler, chapter 7 trustee for Margaux Texas Ventures, Inc. (the "Trustee" or the "Plaintiff"). By way of background, the Debtor, Margaux Texas Ventures, Inc. (the "Debtor"), filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code on March 12, 2010. On July 28, 2010, the Defendant filed Proof of Claim No. 5 (the "Claim") against the Debtor's estate, alleging a secured claim in the amount of $503,998.10. The Trustee filed the Complaint on October 14, 2013, which asserted six causes of action:

- Count 1 seeks a declaratory judgment that the Claim is not secured;
- Count 2 seeks avoidance of a transfer of a security interest (i.e., a pledge of collateral that was made to the Defendant) under 11 U.S.C. § 547;
- Count 3 seeks avoidance of a transfer of a security interest (i.e., a pledge of collateral that was made to the Defendant) under 11 U.S.C. § 548;
- Count 4 seeks avoidance of a transfer of a security interest (i.e., a

---

1. *See* DE # 1 in the AP. References in this Memorandum Opinion and Order to "DE # —— in the AP" shall refer to the docket entry number at which a pleading appears in the docket maintained by the Bankruptcy Clerk in this Adversary Proceeding. References to simply "DE # ——" shall refer to the docket entry number at which a pleading appears in the docket maintained in the above-referenced bankruptcy case (the "Bankruptcy Case") generally.

pledge of collateral that was made to the Defendant) under Tex. Bus. & Comm. Code §§ 24.005 and 24.006 and 11 U.S.C. § 544;

- Count 5 seeks disallowance of the Claim under 11 U.S.C. § 502(d); and
- Count 6 seeks subordination of the Claim under 11 U.S.C. § 510(c). [2]

In the Motion to Dismiss, the Defendant has sought to dismiss the entire Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), which is made applicable in this proceeding pursuant to Bankruptcy Rule 7012. First, the Defendant has argued that the avoidance actions that are articulated in Counts 2, 3 and 4 of the Complaint are time-barred under section 546 of the Bankruptcy Code. Furthermore, because the Defendant's security interest cannot timely be avoided under sections 544, 547 or 548 of the Bankruptcy Code, the Defendant has argued that the Claim is not subject to disallowance under section 502(d) of the Bankruptcy Code and, thus, Count 5 should also be dismissed. Finally, the Defendant has argued that Counts 1 and 6 are merely disguised attempts to obtain the avoidance relief that is otherwise time-barred by section 546 of the Bankruptcy Code, and, consequently, the entire Complaint must be dismissed.

Specifically, with regard to the Motion to Dismiss, the court refers to: (1) the Motion to Dismiss [DE # 5 in the AP], and (2) the Trustee's Response to the Motion to Dismiss and Brief in Support [DE ## 7 & 8 in the AP] (collectively, the "Response"). Based upon the facts as alleged in the Complaint and the arguments presented, this court finds that the Motion to Dismiss Counts 1–4 and 6 shall be granted, but the Motion to Dismiss Count 5 shall be denied. However, as to Count 6, dismissal is granted without prejudice to the Trustee amending the Complaint, within 30 days of the entry of this Memorandum Opinion and Order, to allege further specific facts that might support a plausible claim.

## B. Jurisdiction

Bankruptcy subject matter jurisdiction exists in this Adversary Proceeding, pursuant to 28 U.S.C. § 1334(b). The bankruptcy courts in this district are generally granted authority to exercise bankruptcy subject matter jurisdiction, pursuant to 28 U.S.C. § 157(a) and the Standing Order of Reference of Bankruptcy Cases and Proceedings (Misc. Rule No. 33), for the Northern District of Texas, dated August 3, 1984. The claims at issue in the Complaint are statutory "core" matters, pursuant to 28 U.S.C. § 157(b)(2)(B), (F), and (H). Finally, the court believes it has Constitutional authority to issue dispositive orders in this Adversary Proceeding under *Stern v. Marshall*, 564 U.S. 462, 131 S.Ct. 2594, 180 L.Ed.2d 475 (2011), and its progeny, as all the claims raised are inextricably intertwined with resolution of a proof of claim.

## C. Relevant Facts

1. On March 12, 2010 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the Northern District of Texas, Dallas Division.

2. On March 12, 2010, the Debtor's President and 95% shareholder, Donald Lewis Silverman ("Mr.Silverman"), also filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the Northern District of Texas, Dallas Division (the "Silverman Bankruptcy"). The Sil-

---

**2.** *See* Complaint, paras. 13–52.

verman Bankruptcy is pending as case number 10–31785–HDH–7.

3. Mr. Silverman is a commercial real estate investor and developer, and the Debtor was one of a number of business enterprises owned and operated by Mr. Silverman related to this business.

4. On July 28, 2010, the Defendant filed proof of claim number 5 in the Bankruptcy Case (the "Claim"). The Defendant alleges a secured claim in the amount of $503,998.10. Attached to the Claim are the following documents:

a. A schedule of the amount due to the Defendant after payments and interest;

b. An October 11, 2008 Promissory Note from the Debtor and Mr. Silverman to the Defendant in the principal amount of $324,303.50 (the "Promissory Note");

c. A January 1, 2006 Demand Note from Margaux City Lights Partners, Ltd.[3] to the Debtor in the principal amount of $514,289.10 (the "Demand Note"); and

d. An October 15, 2009 Pledge & Assignment from Debtor, which purports to pledge and assign all of Debtor's right, title and interest in the aforementioned Demand Note to the Defendant as collateral for the Promissory Note (the "Pledge").

5. To be clear, the Defendant was originally given an unsecured promissory note by the Debtor on October 11, 2008. The Defendant was then granted a pledge of a demand note payable to the Debtor (as collateral for the Defendant's promissory note) a year later. It is this Pledge that the Trustee finds problematic. The Debt-

or then filed bankruptcy approximately five months after the Pledge. The Debtor listed the Defendant as a secured creditor on its Schedule D, filed in the Bankruptcy Case at docket number 10. However, the Debtor scheduled the claim in the amount of $324,303.50, of which $74,303.50 is unsecured.

6. At all relevant times, the Defendant was a business partner of Mr. Silverman. She is a licensed real estate broker, and she provided real estate marketing and brokerage services and business management services to Mr. Silverman. The Defendant is also an investor and limited partner in a number of Mr. Silverman's real estate partnerships. In short, the Trustee alleges that the Defendant is an "insider" of the Debtor.

### D. Legal Standard Applicable to the Motion to Dismiss

In evaluating a Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6), which is made applicable in this proceeding pursuant to Bankruptcy Rule 7012, a complaint is to be charitably construed, with all well pleaded factual allegations being accepted as true and with any reasonable inferences from those facts being drawn in favor of the non-moving party, the Trustee.[4] Moreover, "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."[5] In 2009, the Supreme Court clarified the *Twombly* pleading standard and elaborated that, to survive a motion to dismiss, a civil complaint must contain sufficient factual matter, accepted as true, to "state a claim to

---

3. Margaux City Lights Partners, Ltd. filed a voluntary petition for relief under Chapter 11 on September 4, 2012. That case is currently pending as Case 12–35828–BJH–11.

4. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555–56, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

5. *Id.*

relief that is plausible on its face."[6] In ruling on a Rule 12(b)(6) Motion, the material to which the court may refer is limited, and the court should not look beyond the pleadings.[7] The pleadings include the complaint and any documents attached to it.[8]

### E. Analysis of the Motion to Dismiss
#### a. Counts 2–4

Counts 2–4 of the Complaint are all avoidance actions—specifically:

- Count 2 seeks avoidance of the Pledge (*i.e.*, the transfer of a security interest to the Defendant) under 11 U.S.C. § 547;
- Count 3 seeks avoidance of the Pledge (*i.e.*, the transfer of a security interest to the Defendant) under 11 U.S.C. § 548; and
- Count 4 seeks avoidance of the Pledge (i.e., the transfer of a security interest to the Defendant) under Tex. Bus. & Comm. Code §§ 24.005 and 24.006 and 11 U.S.C. § 544.

As to Counts 2–4, section 546(a) of the Bankruptcy Code establishes the time period within which a trustee must commence actions under sections 544, 547 or 548. Specifically, section 546(a) of the Bankruptcy Code provides as follows:

(a) An action or proceeding under section 544, 545, 547, 548, or 553 of this title may not be commenced after the earlier of—

(1) the later of—

(A) 2 years after the entry of the order for relief; or

(B) 1 year after the appointment or election of the first trustee under section 702, 1104, 1163, 1202, or 1302 of this title if such appointment or such election occurs before the expiration of the period specified in subparagraph (A); or (2) the time the case is closed or dismissed.[9]

Here, the Trustee was appointed on March 12, 2010 (the same day as the Order for Relief).[10] Consequently, the Trustee was required under section 546(a) of the Bankruptcy Code to bring an action under sections 544, 547 or 548, if at all, on or before March 12, 2012, the second anniversary of the entry of the order for relief. The Complaint was not filed until October 15, 2013, well after that deadline. Counts 2, 3 and 4, which are based on sections 547, 548 and 544, respectively, are therefore untimely and must be dismissed.[11]

■ Further, it is the view of this court that the deadline for bringing an action under the Texas fraudulent conveyance statutes[12] is inapplicable to this action by

---

**6.** *Ashcroft v. Iqbal*, 556 U.S. 662, 678–680, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (the Court also affirmed the *Twombly* two-pronged approach to deciding motions to dismiss: first, determine what is a factual allegation versus a legal conclusion, as only factual allegations will be accepted as true; and second, determine whether the factual allegations state a plausible claim for relief).

**7.** *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir.1999).

**8.** *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir.2000).

**9.** 11 U.S.C. § 546.

**10.** *See* DE # 4 (Notice of Chapter 7 Bankruptcy Case, Meeting of Creditors, & Deadlines, filed March 12, 2010, identifying the Trustee).

**11.** The Fifth Circuit has held that when a successful affirmative defense (*i.e.*, statute of limitations) appears on the face of pleadings, dismissal under Rule 12(b)(6) may be appropriate. *See Kansa Reinsurance Co., Ltd. v. Congressional Mortg. Corp. of Texas*, 20 F.3d 1362, 1366 (5th Cir.1994).

**12.** TEX. BUS. & COMM. CODE ANN. § 24.010 (generally setting forth a deadline of four years to avoid a transfer).

the Trustee, but rather is governed by section 546 of the Bankruptcy Code. Specifically, sections 24.005 and 24.006 of the Texas Business and Commerce Code grant a **creditor** the right to avoid transfers under certain conditions.[13] Here, the Trustee is not a creditor, and lacks standing to sue under either section 24.005 or 24.006 in the absence of section 544 of the Bankruptcy Code.[14] As noted above, section 544 of the Bankruptcy Code is subject to section 546(a)(1)'s two-year statute of limitations. As the Bankruptcy Court for the Southern District of Texas recently explained:

> ...the Bankruptcy Code's limitations period on the Trustees' avoidance actions also applies to the state-law fraudulent transfer claims. When a trustee asserts an avoidance action under state law, pursuant to the avoidance power under § 544 of the Bankruptcy Code, the trustee is bound by the Bankruptcy Code's limitations period under § 546.... Under Texas law, the Court looks back to determine whether the alleged transfers were sufficiently recent. The § 546 limitations period, on the other hand, is independent of the time of the transfers. Here, the § 546 period ran forward from October 29, 2007, the date of the entry of the order for relief.

The limitations period in § 546 is a double-edged sword for the trustee. If, at the beginning of a bankruptcy proceeding, a state-law fraudulent transfer claim is viable, then the trustee has two years to bring the claim—regardless of whether the claim is still viable under state law by the time the trustee brings the action. *Id.* The § 546 limitations period usually operates to give the trustee "breathing room" to bring a claim even after the state-law limitations period has ended. But § 546 sometimes—as in this case—bars claims that would otherwise be viable under state law....

A trustee's action applying state fraudulent transfer law is brought "under" § 544, because without the specific empowerment of the statute the trustee would lack standing. By its very terms, then, § 546(a) requires actions commenced with the empowerment of § 544 to be brought by its deadlines. The Trustees here bring the claims under the authority of § 544, and they are bound by the limitations in § 546, regardless of what Texas law allows....

The plain language of § 546 bars the claims. The text of § 546 contains no exceptions to the limitations period, nor does it contain any implication that a state law statute of limitations may extend the two-year period after the entry of the order for relief.[15]

**13.** Tex. Bus. & Comm. Code Ann. §§ 24.005 and 24.006 (emphasis added).

**14.** *Goldberg v. Craig (In re Hydro–Action, Inc.)*, 341 B.R. 186, 189, fn. 3 (Bankr. E.D.Tex.2006) (because a trustee lacks standing to assert his state law causes of action absent the authority granted by 11 U.S.C. § 544, those portions of his complaint pertaining to state law are also affected by the operation of the § 546(a) limitations period); *Gen. Elec. Capital Auto Lease, Inc. v. Broach (In re Lucas Dallas, Inc.)*, 185 B.R. 801, 804–805 (9th Cir. BAP 1995) (a trustee is authorized to prosecute state law fraudulent transfer actions under section 544 of the Bankruptcy Code).

**15.** *Hill v. Oria (In re Juliet Homes, LP)*, Adv. No. 09–03429, 2010 WL 5256806, at *16–17 (Bankr.S.D.Tex. Dec. 16, 2010) (citations omitted); *see also Hydro–Action*, 341 B.R. at 189, fn. 3; *Lucas Dallas*, 185 B.R. at 804–805; *Hunter v. Hansen (In re Hansen)*, 114 B.R. 927, 933–934 (Bankr.N.D.Ohio 1990); *In re Revco D.S., Inc.*, 118 B.R. 468, 497 (Bankr.N.D.Ohio 1990). *But see GMAC Mortgage, LLC v. Blitz Holdings Corp. (In re IFS Fin. Corp.)*, Adv. No. 08–03047, 2008 WL 4533713, at *2 (Bankr.S.D.Tex. Oct. 2, 2008).

Accordingly, because the two-year deadline of the statute of limitations under section 546 of the Bankruptcy Code has now passed, Counts 2, 3 and 4 of the Complaint are time-barred and must each be dismissed.

### b. Count 1

Count 1 seeks a declaratory judgment that the Defendant does not hold a properly perfected security interest in the Demand Note because sections 544, 547, and 548 of the Bankruptcy Code and Chapters 9 and 24 of the Texas Business and Commerce Code authorize him to avoid the Pledge that the Defendant purportedly received in the Demand Note. Count 1 is, in essence, a masked avoidance action in a cloak of declaratory relief. As discussed above, avoidance actions are now time-barred and the Trustee cannot use a declaratory action as a run-around to getting relief that is otherwise time-barred. [16]

Notably, the Trustee has argued as part of Count 1 that that the Debtor did not validly convey a security interest in the Demand Note to the Defendant, making a reference to Chapter 9 of the Texas Business and Commerce Code. In other words, the Trustee seems to be requesting that the court declare that there was no valid security interest created in the Demand Note, pursuant to the provisions of Chapter 9 of the Texas Business and Commerce Code—without, perhaps, resorting to any of the avoidance action statutes (and the section 546 problem that is inherent within). However, in the absence of invoking an avoidance statute, there is no basis for declaring the Pledge/security interest invalid or unenforceable. In other words, the only way the Trustee may invoke state law to invalidate the Defendant's lien (*i.e.*, the only way he can invoke Chapter 9 of the Texas Business and Commerce Code) is through section 544 of the Bankruptcy Code—which he is time-barred from utilizing, pursuant to section 546 of the Bankruptcy Code. [17] Again, the Trustee cannot use a declaratory action as a run-around to get relief that is otherwise time-barred.

### c. Count 6

Count 6 of the Complaint seeks equitable subordination of the Claim pursuant to section 510(c) of the Bankruptcy Code. Equitable subordination under section 510(c) is an extraordinary remedy, to be sparingly employed. [18] This is because:

Wrongful or unpredictable subordination spawns legal uncertainty of a particular

---

16. *Connolly v. McCall,* No. 98 Civ. 2889, 2000 WL 375239, at *4 (S.D.N.Y. April 12, 2000) (claims for declaratory relief are governed by the period of limitations applicable to the substantive claims underlying the action); *John Beaudette, Inc. v. Sentry Ins.,* 94 F.Supp.2d 77, 98 (D.Mass.1999) (an action for declaratory relief is a procedural device and therefore time barred to the extent the direct or underlying substantive claim is also time barred); *Dravo Corp. v. Zuber,* 804 F.Supp. 1182, 1186 fn. 2 (D.Neb.1992) (one cannot declare the rights of the parties without reference to the applicable substantive law and the applicable substantive law requires dismissal).

17. To be clear, the only way the Trustee could attack the validity of the Pledge to the Defendant under Chapter 9 of the Texas Business and Commerce Code is by utilizing his status as a hypothetical lien creditor under section 544 of the Bankruptcy Code. *Westbrooks v. GMAC Mortgage, LLC,* Civ. Action No. 3:12–3719, 2013 WL 2093062, at *3 (N.D.Tex. April 16, 2013).

18. *Holt v. F.D.I.C. (In re CTS Truss, Inc.),* 868 F.2d 146, 148–49 (5th Cir.1989) ("this case does not fall within any of the classic patterns of conduct that led courts to fashion the extraordinary remedy of equitable subordination"); *U.S. Abatement Corp. v. Mobil Exploration & Producing U.S., Inc. (In re U.S. Abatement Corp.),* 39 F.3d 556, 561 (5th Cir. 1994) ("Equitable subordination is a remedial, not penal, measure which is used only sparingly").

type: the risk that a court may refuse to honor an otherwise binding agreement on amorphous grounds of equity. If a court wrongly subordinates a claim, other investors are sure to take heed. An investor will see that the chance she might not get her money back has gone up slightly. She will be less willing to lend or invest in the future; and the cost of credit will rise for all.[19]

Equitable subordination, first recognized at common law, is codified in section 510(c) of the Bankruptcy Code. Section 510(c) provides, in relevant part: after notice and a hearing, the court may ... under principles of equitable subordination, subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim or all or part of an allowed interest to all or part of another allowed interest ...[20]

The elements of equitable subordination have been articulated in the Fifth Circuit as follows: (1) the claimant must have engaged in inequitable conduct; (2) the misconduct must have resulted in injury to the creditors or conferred an unfair advantage to the claimant; and (3) equitable subordination of the claim must not be inconsistent with the provisions of the Bankruptcy Code.[21] If any of these elements are not satisfied, equitable subordination is inappropriate.[22] Further, "[e]quitable subordination is remedial, not penal, in nature, and in the absence of actual harm, equitable subordination is inappropriate."[23] Equitable subordination is, therefore, proper only to the extent necessary to offset the harm suffered as a result of the conduct in question.[24]

When reviewing equitable subordination claims, courts impose a higher standard on the conduct of insiders.[25] Indeed, "[a] claim arising from the dealings between a debtor and an insider is to be rigorously scrutinized by the courts."[26] Therefore, "if the claimant is an insider, less egregious conduct may support equitable subordination."[27] Still, even in the case of an insider, the courts must continue to use caution in applying the remedy because "equitable subordination is an unusual remedy which should be applied in limited circumstances."[28] The mere existence of an insider relationship alone is insufficient to warrant subordination."[29]

19. *Nat'l Emergency Servs. v. Williams*, 371 B.R. 166, 170 (W.D.Va.2007) (citing *In re Lifschultz Fast Freight*, 132 F.3d 339, 347 (7th Cir.1997)).

20. 11 U.S.C. § 510(c).

21. *Wooley v. Faulkner (In re SI Restructuring, Inc.)*, 532 F.3d 355, 360 (5th Cir.2008).

22. *Id.*; *see also Benjamin v. Diamond (In re Mobile Steel Co.)*, 563 F.2d 692, 706 (5th Cir.1977) (denying subordination because there was "no factual showing that any of these purported improprieties injured either Mobile Steel or its creditors").

23. *SI Restructuring, Inc.*, 532 F.3d at 361.

24. *Id.*

25. *Bayer Corp. v. MascoTech, Inc. (In re AutoStyle Plastics, Inc.)*, 269 F.3d 726, 744–45 (6th Cir.2006).

26. *Id.* (citing *Fabricators, Inc. v. Technical Fabricators, Inc. (In re Fabricators, Inc.)*, 926 F.2d 1458, 1465 (5th Cir.1991)).

27. *AutoStyle Plastics*, 269 F.3d at 745 (citing *Summit Coffee Co. v. Herby's Foods, Inc. (In re Herby's Foods, Inc.)*, 2 F.3d 128, 131 (5th Cir.1993)); *see also Fabricators*, 926 F.2d at 1465 ("If the claimant is not an insider, then evidence of more egregious conduct such as fraud, spoilation or overreaching is necessary").

28. *AutoStyle Plastics*, 269 F.3d at 745 (citing *Fabricators*, 926 F.2d at 1464).

29. *Blasbalg v. Tarro (In re Hyperion Enters., Inc.)*, 158 B.R. 555, 563 (D.R.I.1993).

In fact, claims involving insiders "are not automatically subordinated" since "insiders are the persons most interested in restoring and reviving the debtor, and such bona fide efforts should be viewed with approval." [30] Thus, insider transactions should be more closely scrutinized, not because the insider relationship makes them inherently wrong, but because insiders "usually have greater opportunities for ... inequitable conduct." [31] Moreover, the presence of insider status goes only to establishing the standard to apply in reviewing the insider's conduct. [32] Specifically, in order to equitably subordinate an insider claim, the insider must actually use its power to control to its own advantage or to the other creditors' detriment. [33]

With these standards in mind, the court must analyze whether the factual allegations in the Complaint are enough to raise a plausible right to the relief of equitable subordination above the speculative level—assuming the factual allegations are all true and drawing reasonable inferences in favor of the Trustee. Here, the Trustee alleges in the Complaint that the Defendant's security interest was "made at a time when the Debtor was insolvent, and for the purpose of elevating the Defendant from a general unsecured creditor to secured creditor to the detriment of the Debtor's other creditors." [34] In other words, the Trustee has alleged that because the Defendant's security interest was created at a time when the Debtor was undercapitalized, the Defendant was engaging in misconduct, thereby necessitating the subordination of the Claim.

Undercapitalization may create circumstances in which inequitable conduct is more likely to occur. [35] However, undercapitalization alone is insufficient to justify the subordination of insider claims. [36] "A finding of inequitable conduct requires more than a showing of undercapitalization. There must be evidence of other inequitable conduct." [37] This is because "any other analysis would discourage loans from insiders to corporations facing financial difficulty and would be unfortunate because it is the shareholders who are most likely to have the motivation to salvage a floundering company." [38] Thus, a court may equitably subordinate a claim if there is "some showing of suspicious, inequitable conduct beyond mere initial undercapitalization of the enterprise." [39] Such conduct may include "fraud, spoliation, mismanagement or faithless stewardship." [40]

Based on the facts alleged in the Complaint, and even assuming that all

---

30. *Id.*

31. *Fabricators*, 926 F.2d at 1465.

32. *Id.* at 1467.

33. *Comstock v. Group of Institutional Investors*, 335 U.S. 211, 229, 68 S.Ct. 1454, 92 L.Ed. 1911 (1948).

34. *See* Complaint, para. 51.

35. *Bayer Corp. v. MascoTech, Inc. (In re AutoStyle Plastics, Inc.)*, 269 F.3d 726, 747 (6th Cir.2006).

36. *Id.*

37. *Id.* (quoting *Blasbalg v. Tarro (In re Hyperion Enters., Inc.)*, 158 B.R. 555, 563 (D.R.I. 1993)).

38. *AutoStyle Plastics*, 269 F.3d at 747 (quoting *Braas Sys., Inc. v. WMR Partners (In re Octagon Roofing)*, 157 B.R. 852, 858 (N.D.Ill. 1993)).

39. *AutoStyle Plastics*, 269 F.3d at 747 (quoting *Wood v. Richmond (In re Branding Iron Steak House)*, 536 F.2d 299, 302 (9th Cir. 1976)).

40. *AutoStyle Plastics*, 269 F.3d at 747 (quoting *In re Octagon Roofing*, 157 B.R. 852, 858 (N.D.Ill.1993))).

facts are wholly true and the Defendant was an insider (which the court must do in the context of a Rule 12(b)(6) motion), the court cannot conclude that the Complaint states a claim for relief above a speculative level by alleging inequitable conduct based solely on undercapitalization of the Debtor. Even accepting the fact that the Debtor was undercapitalized at the time the Defendant's security interest was created, the Trustee has not alleged that there was any further specific inequitable conduct by the Defendant beyond this fact. Even though the Defendant may have been an insider at the time of the Transfer, the Trustee must still allege more than just mere undercapitalization in order to equitably subordinate the Defendant's Claim pursuant to section 510(c) of the Bankruptcy Code. Accordingly, the Motion to Dismiss is granted as to Count 6. However, this is without prejudice to the Trustee amending the Complaint to allege further specific facts of misconduct beyond mere undercapitalization. The Trustee shall have 30 days to amend, and, if he does not, he shall thereafter by barred from amending.

#### d. Count 5

Count 5 of the Complaint seeks disallowance of the Claim pursuant to section 502(d) of the Bankruptcy Code. Section 502(d) of the Bankruptcy Code provides:

> Notwithstanding subsections (a) and (b) of this section, the court shall disallow any claim of any entity from which property is recoverable under section 542, 543, 550, or 553 of this title or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548,

549, or 724(a) of this title, unless such entity or transferee has paid the amount, or turned over any such property, for which such entity or transferee is liable under section 522(i), 542, 543, 550, or 553 of this title.

As stated above in the court's analysis of counts 2–4, the Trustee's limitations period under section 546 of the Bankruptcy Code to bring avoidance actions has already passed. However, count 5 seeks to simply disallow the Defendant's Claim pursuant to section 502(d) of the Bankruptcy Code (*i.e.*, defensively—presumably unless or until the Defendant relinquishes her security interest) rather than pursuing actual affirmative relief under other provisions of the Bankruptcy Code. The Fifth Circuit Court of Appeals has not addressed the issue of whether a trustee may use his avoidance powers defensively, following the expiration of the statutory limitation on filing avoidance actions, and, to date, courts elsewhere are split on this issue.

##### i. The Majority View

The clear majority of cases, including decisions from several Circuit Courts of Appeals, have held that, while the statute of limitations in section 546(a) of the Bankruptcy Code may present an obstacle in successfully avoiding a transfer of property under the avoidance statutes, it does not prevent a trustee from essentially asserting an avoidable transfer *defensively* to disallow a proof of claim under section 502(d) of the Bankruptcy Code unless or until the claimant returns property, relinquishes a lien, or the like.[41] From the decisions following the majority review,

---

41. *See Grant, Konvalinka & Harrison, P.C. v. Still (In re Mckenzie)*, 737 F.3d 1034, 1041–42 (6th Cir.2013); *see also El Paso v. Am. W. Airlines, Inc. (In re Am. W. Airlines, Inc.)*, 217 F.3d 1161, 1168 (9th Cir.2000); *In re Disc. Family Boats of Tex., Inc.*, 233 B.R. 365, 368 (Bankr.E.D.Tex.1999); *U.S. Lines, Inc. v.* *United States (In re McLean Indus., Inc.)*, 196 B.R. 670, 675–77 (S.D.N.Y.1996); *Comm. of Unsecured Creditors v. Commodity Credit Corp. (In re KF Dairies, Inc.)*, 143 B.R. 734, 735–737 (9th Cir. BAP 1992); *In re Stoecker*, 143 B.R. 118, 131 (Bankr.N.D.Ill.1992), *aff'd*, 143 B.R. 879 (N.D.Ill.1992); *In re Mid Atlantic*

one can discern three key arguments for allowing a trustee to defensively use section 502(d) to disallow a claim: (1) the specific language of section 502(d); (2) pre-code case law; and (3) policy considerations. [42]

### 1. The Specific Language of Section 502(d)

Those courts following the majority view have first looked at the specific language of section 502(d) of the Bankruptcy Code to determine whether or not the statute itself would allow a trustee to disallow a claim of an entity that was a transferee of an avoidable transfer or an entity for which property is recoverable, where the statute of limitations to avoid such transfer has already run. First, section 502(d) of the Bankruptcy Code does not specifically refer to section 546(a)(*l* )(A)'s two-year statute of limitations, nor does section 502(d) contain a limitations period of its own. [43] Thus, nothing in the text of section 502(d) appears to prevent a trustee from using his avoidance powers defensively after the expiration of the statute of limitations set forth in section 546(a)(1)(A). By way of example, the bankruptcy court in *In re Mid Atlantic Fund, Inc.* dismissed as "grasping at straws" the argument that "the use of the word 'avoidable' " in section 502(d) was intended to incorporate the

statute of limitations fixed by section 546 of the Bankruptcy Code and emphasized that the materiality of section 546 could have been expressed "much more directly and plainly ... by using the word 'timely' in front of avoidance or by adding a reference to Code § 546." ' [44] Similarly, the bankruptcy court in *In re Stoecker*, 143 B.R. 118, 131 (Bankr.N.D.Ill.1992), stated:

> ...the central issue facing the Court is whether the Trustee may now invoke section 502(d) to disallow secured claims as formally [sic] potentially voidable preferential transfers under section 547, even though he is precluded from now filing such avoidance actions pursuant to section 546(a). The text of section 502(d) silently speaks to this issue by omitting any reference to section 546(a).... Similarly, section 546(a) is devoid of any reference to section 502(d) or a time period during which the trustee must object to a claim.... [45]

While those courts following the majority view have found the plain meaning of the statute to be dispositive, several courts have also relied on pre-Code case law as support for allowing the defensive use of section 502(d) by trustees.

### 2. Pre–Code Case Law

Sections 502(d) and 546(a)(1) of the Bankruptcy Code are based on sections

---

*Fund, Inc.*, 60 B.R. 604, 609–11 (Bankr. S.D.N.Y.1986).

Moreover, two Circuit–Court decisions construing the predecessor to § 502(d) have permitted trustees to object to claims after the limitations period had run. See *Farmers & Traders State Bank of Meredosia v. Magill (In re Meredosia Harbor & Fleeting Serv., Inc.)*, 545 F.2d 583, 590 (7th Cir.1976) (explaining that the trustee's defense "was in the nature of recoupment and therefore not barred" by the statute of limitations); *In re Cushman Bakery*, 526 F.2d 23, 36 (1st Cir.1975) ("[T]here are no affirmative reasons for holding that [the statute of limitations] applies to objections to the allowance of a claim.").

**42.** Arthur Steinberg & Joshua Fruchter, BANKRUPTCY CODE SECTION 502(D): BACK DOOR TO AVOIDANCE?, 28 UCCL.J. 73, 77 (1995).

**43.** *See* 11 U.S.C. § 502(d); *see also McLean Indus.*, 196 B.R. at 676–77 (if a limitations period on claim objections under section 502(d) was intended by Congress, it easily could have included a reference to section 502(d) in section 546(a)) (quoting *In re Stoecker*, 143 B.R. at 132).

**44.** *In re Mid Atlantic Fund, Inc.*, 60 B.R. at 610 n. 11.

**45.** *In re Stoecker*, 143 B.R. at 131.

57g and 11e of the former Bankruptcy Act. [46] Specifically, section 57g of the former Bankruptcy Act (as amended) read: "The claims of creditors who have received or acquired preferences . . . void or voidable under this Act, shall not be allowed unless such creditors shall surrender such preferences." [47] In addition, section 11(e) of the former Bankruptcy Act provided that a trustee "may, within two years subsequent to the date of adjudication . . . institute proceedings in behalf of the estate upon any claim against which period of limitation fixed by Federal or State law has not expired at the time of the filing of the petition in bankruptcy." [48]

In *In re Cushman Bakery,* the leading case interpreting the prior law, the First Circuit held that the two-year statute of limitations contained in section 11e did not apply to a trustee's objection to a claim under section 57g. [49] The First Circuit carefully analyzed the scheme and purposes of the former Bankruptcy Act as a whole, the nature and objectives of the claims process, and the objectives of statutes of limitations generally. [50] This searching inquiry led the First Circuit to conclude that "there are no affirmative reasons for holding that § 11e applies to objections to the allowance of a claim." [51] The Seventh Circuit followed suit in *In re Meredosia Harbor & Fleeting Serv., Inc.,*

holding that section 11e was inapplicable when the trustee "defends money in his hands from creditors" who received preferential transfers, even though the trustee would be time barred from bringing a preference action against such creditors. [52]

### 3. Policy Considerations

Finally, those courts following the majority view have argued that allowing trustees to use section 502(d) defensively furthers one of the central purposes of the Bankruptcy Code—to ensure the equality of distribution among creditors. [53] As stated by the Ninth Circuit Bankruptcy Appellate Panel in *In re KF Dairies, Inc.,* the Code:

> does not sanction a choice between the equal distribution an [avoidable preference] action would provide and the less unequal distribution an objection would provide. When both are available to remedy an avoidable transfer, an action yielding affirmative relief should be pursued. If an action is time barred, an objection yielding partial relief should be pursued. In this manner, the Code achieves the most equal distribution available. . . . [54]

In other words, courts following the majority view are attempting to counteract the transferee's perceived unfair economic advantage over other creditors by disallow-

**46.** *In re Mid Atlantic Fund,* 60 B.R. at 609–10.

**47.** The Chandler Act, Pub.L. No. 696, § 57(g), 52 Stat. 840 (1938).

**48.** The Chandler Act, Pub.L. No. 696, § 11(e), 52 Stat. 840 (1938).

**49.** *See In re Cushman Bakery,* 526 F.2d 23, 34–37 (1st Cir.1975), cert. denied sub nom., *Agger v. Seaboard Allied Milling Corp.,* 425 U.S. 937, 96 S.Ct. 1670, 48 L.Ed.2d 178 (1976).

**50.** *Id.* at 35–36.

**51.** *Id.* at 36.

**52.** *Farmers & Traders State Bank of Meredosia v. Magill (In re Meredosia Harbor & Fleeting Serv., Inc.),* 545 F.2d 583, 590 (7th Cir. 1976), cert. denied, 430 U.S. 967, 97 S.Ct. 1649, 52 L.Ed.2d 359 (1977) (internal quotation marks omitted).

**53.** *See Union Bank v. Wolas,* 502 U.S. 151, 161, 112 S.Ct. 527, 116 L.Ed.2d 514 (1991).

**54.** *Comm. of Unsecured Creditors v. Commodity Credit Corp. (In re KF Dairies, Inc.),* 143 B.R. 734, 737 (9th Cir. BAP 1992).

ing an otherwise avoidable claim pursuant to section 502(d) of the Bankruptcy Code.[55]

### ii. The Minority View

While most courts have held that a trustee can defensively use section 502(d) of the Bankruptcy Code after the deadline for filing avoidance actions, a few bankruptcy courts have nonetheless found to the contrary.[56] The courts that have followed this minority view have relied on the language of section 502(d) of the Bankruptcy Code, as well as section 502(d)'s legislative history, as support for finding that a trustee may not utilize the disallowance mechanism of section 502(d) to assert an otherwise time-barred avoidance action.

#### 1. *Plain Language of Section 502(d)*

First, in examining the plain language of section 502(d), courts following the minority view have found that section 502(d) only requires disallowance of claims that are actually "avoidable" under the relevant avoidance provisions. Specifically, in *In re Mktg. Assocs. of Am., Inc.*, the bankruptcy court held that

> the plain meaning of Section 502(d) mandates that the Trustee first must timely bring his preference action in order to invoke that provision. In pertinent part, Section 502(d) requires the court to disallow any claim that is "avoidable" under Section 547 if the transferee fails to return first the preference it has received. However, it is implicit that no

preference is avoidable if the action is not brought within the time limits prescribed by Section 546(a)(1). Here the Trustee has admitted that this statute of limitations has expired. Thus, because no preference action may ever be brought, there can be no preference which is "avoidable" within the meaning of Section 502(d).[57]

Moreover, the bankruptcy further found that:

> the same holds true when the statute speaks of the amount for which the transferee "is liable" under Section 550. This provision provides in pertinent part that the transferee is liable to the extent of the transfer avoided. However, because the time limitations of Section 546(a)(1) preclude any such avoidance, this portion of Section 502(d) is equally inapplicable to the instant case.

In other words, courts following the minority view tend to focus on section 502(d)'s usage of the phrases "avoidable" and "is liable" and, thus, hold that section 502(d)'s plain language requires disallowance of claims of only transferees whose transfers are *actually avoidable and recoverable* under the relevant turn-over and avoidance provisions of the Bankruptcy Code.

#### 2. *Legislative History*

Second, the legislative history regarding section 502(d) arguably lends further support to the minority position.[58] Specifical-

---

**55.** *See Grant, Konvalinka & Harrison, P.C. v. Still (In re Mckenzie)*, 737 F.3d 1034, 1042 (6th Cir.2013); *In re Cushman Bakery*, 526 F.2d 23, 36 (1st Cir.1975); *U.S. Lines, Inc. v. United States (In re McLean Indus., Inc.)*, 196 B.R. 670, 677 (S.D.N.Y.1996).

**56.** *Mktg. Res. Int'l Corp. v. PTC Corp. (In re Mktg. Res. Int'l Corp.)*, 35 B.R. 353, 356 (Bankr.E.D.Pa.1984); *In re Mktg. Assocs. of Am., Inc.*, 122 B.R. 367 (Bankr.E.D.Mo.1991); *see also Harold J. Barkley, Jr. v. West (In re*

West)*, 474 B.R. 191, 202–203 (Bankr. N.D.Miss.2012); *GMAC Mortg. LLC v. Blitz Holdings Corp. (In rel IFSin. Corp.)*, Adv. No. 08–03047, 2008 WL 4533713, at *3–5 (Bankr. S.D.Tex. Oct. 2, 2008).

**57.** *In re Mktg. Assocs. of Am.*, 122 B.R. at 370.

**58.** Arthur Steinberg & Joshua Fruchter, BANKRUPTCY CODE SECTION 502(D): BACK DOOR TO AVOIDANCE?, 28 UCCL.J. 73, 81 (1995).

ly, the legislative history to section 502(d) provides: "Subsection (d) is derived from present law. It requires disallowance of a claim of a transferee of a voidable transfer in toto if the transferee has not paid the amount or turned over the property received as required under the sections under which the transferee's liability arises." [59] Significantly, the legislative history points out that section 502(d) of the Bankruptcy Code requires disallowance whenever the transferee has not returned the property received *"as required* under the sections under which the transferee's liability arises" (*e.g.*, sections 547 and 548 of the Bankruptcy Code). [60] A transferee is seemingly not legally "required" to return an alleged preference if the time for bringing such avoidance action has already run. Thus, the legislative history arguably suggests *actual* avoidance as a key consideration, and provides further support for the minority view.

### iii. Decisions by Courts Within The Fifth Circuit

Having now noted the two competing views regarding a trustee's defensive use of section 502(d) of the Bankruptcy Code, the court will now examine which view courts within the Fifth Circuit have followed. First, there is at least one bankruptcy court in the Eastern District of Texas that has chosen to follow the majority view. In *In re Disc. Family Boats of Tex.*, certain secured creditors of the debtor objected to another secured creditor's motion for distribution of sales proceeds on the basis that the payments this moving creditor had already received prior to the

conversion of the bankruptcy case to Chapter 7 were avoidable post-petition transfers. [61] The moving creditor countered that the secured creditors' section 549 objection was barred by the two-year limitations applicable thereto. [62] The bankruptcy court ultimately agreed with the objecting creditors' reliance on the majority view and held that, under section 502(d) of the Bankruptcy Code, the objecting creditors need only make a *prima facie* showing that the moving creditor received an unauthorized transfer, and that once the establishment of an avoidable transfer is shown, then the court is required to disallow the claim of the recipient of the unauthorized transfer, even though the transfer could not be challenged due to the statute of limitations. [63]

However, there are two bankruptcy courts within the Fifth Circuit that have, instead, followed the minority view. First, in *In re IFS Fin. Corp.*, the bankruptcy court for the Southern District of Texas followed the minority view and prohibited a trustee from utilizing section 502(d) of the Bankruptcy Code defensively to disallow a claim of a creditor that has received a transfer that would otherwise have been avoidable under section 24.005(a) of the Texas Uniform Fraudulent Transfer Act ("TUFTA") if not for time limitations. [64] However, this opinion is arguably somewhat distinguishable from other "minority view" cases, because Judge Isgur did not believe that section 546 of the Bankruptcy Code was the applicable statute of limitations when an avoidance action is brought pursuant to a state fraudulent transfer

**59.** S. Rep. No. 95-989, at 65 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5851.

**60.** 60 *Id.* (emphasis added).

**61.** *In re Disc. Family Boats of Tex., Inc.*, 233 B.R. 365, 367–68 (Bankr.E.D.Tex.1999).

**62.** *Id.*

**63.** *Id.*

**64.** *GMAC Mortgage, LLC v. Blitz Holdings Corp. (In re IFS Fin. Corp.)*, Adv. No. 08–03047, 2008 WL 4533713, at *2–4 (Bankr. S.D.Tex. Oct. 2, 2008).

statute, via section 544 of the Bankruptcy Code. Rather, he thought the state-law "statute of limitations" applied and, in the state of Texas, it is quite clear that the "statute of limitations" is really a "statute of repose" (which is somewhat significant). Specifically, Judge Isgur held that:

> ...Based on § 502(d)'s plain language and the Fifth Circuit's interpretation of § 502(d), the Court holds that Blitz's proof of claim may not be disallowed under § 502(d)....If an affirmative defense or other grounds preclude the trustee from recovering the avoidable transfer, the claim cannot be disallowed under § 502(d). **A Texas statute of repose has extinguished any claim the trustee may have had against Blitz....**
>
> The Court must give effect to a statute's plain language.... Section 502(d)'s plain language requires disallowance only of claims that are "recoverable" or "avoidable" under the relevant turn-over and avoidance provisions.... The last clause of § 502(d) emphasizes this interpretation by describing transferees subject to the provision as creditors who are "liable." Section 502(d) makes no exceptions for claims that would be "recoverable" or "avoidable" if the court ignores an affirmative defense that precludes the trustee from recovering or avoiding a transfer that gave rise to the claim. Blitz's alleged fraudulent transfer is not recoverable or avoidable. TUFTA's statute of repose has extinguished any claim the trustee may have held under § 544 of the Bankruptcy Code. Accordingly, the Court cannot disallow Blitz's claim.
>
> Interpreting § 502(d) according to its plain language is consistent with the Congressional purpose behind the stat-

ute. As the Fifth Circuit has held, § 502(d) was intended to serve as a mechanism to enforce orders and judgments based on turn-over and avoidance complaints. *Campbell v. U.S. (In re Davis)*, 889 F.2d 658, 661 (5th Cir.1989) ("The legislative history and policy behind Section 502(d) illustrates that the section is intended to have the coercive effect of insuring compliance with judicial orders) ... [65]

As indicated in the quote, Judge Isgur relied on a Fifth Circuit case (*In re Davis* ) discussing section 502(d) of the Bankruptcy Code. This court interprets *In re Davis* differently than Judge Isgur did (as explained further below).

Also following the minority view, the bankruptcy court for the Southern District of Mississippi held in *In re West* that section 502(d) of the Bankruptcy Code was designed to be triggered after a creditor had been adjudicated to turn over amounts belonging to the bankruptcy estate. [66] In *In re West*, a trustee for a Chapter 12 debtor filed an adversary proceeding seeking to set aside certain transfers made to a Chapter 12 debtor's mother, Grace West, and a limited partnership that she controlled, H & G Land Company, L.P. ("H & G"), pursuant to sections 544, 547, and 549 of the Bankruptcy Code. When Grace West and H & G asserted that the statute of limitations periods for bringing such actions had passed under sections 546 and 549 of the Bankruptcy Code, the trustee amended his complaint, alleging that he could defensively assert section 502(d) of the Bankruptcy Code to disallow a secured proof of claim filed by Grace West and recover payments that she had already received on her secured proof of claim.

---

**65.** *Id.* (emphasis added).

**66.** *Barkley v. West (In re West),* 474 B.R. 191, 201 (Bankr. N.D. Miss. 2012).

Citing to Judge Isgur's ruling in *In re IFS Fin Corp.*, and also citing the Fifth Circuit case of *In re Davis*, the bankruptcy court in *In re West* chose to follow the minority view and found that:

> § 502(d) is designed to be triggered after a creditor has been "adjudicated" to turn over amounts belonging to the bankruptcy estate. The Fifth Circuit's decision comports with the plain meaning of the statute.... The defendants' motion to dismiss is not deflected by § 502(d) when the trustee's causes of action are time barred and the defendants cannot be adjudicated to have liability to the estate. [67]

Accordingly, the bankruptcy court chose to dismiss the trustee's complaint against Grace West and H & G. [68]

#### iv. The In re Davis Decision

As noted above, the two cases within the Fifth Circuit that follow the minority view (*In re IFS Fin. Corp.* from the bankruptcy court of the Southern District of Texas and *In re West* from the bankruptcy court Southern District of Mississippi) placed reliance on the Fifth Circuit's *In re Davis* case, [69] which did, in fact, address the applicability of section 502(d) to a certain fact pattern and, in declining to apply section 502(d) to the facts in that case, contained some discussion of the "legislative history and policy behind Section 502(d)." [70] To be clear, though, the *In re Davis* case is **not on point** as to the issue presented in this case; that is, *In re Davis* does *not* deal with the question of whether section 502(d) can be utilized to object to a claim when the whole basis for objecting is that

the claimant was the transferee of an avoidable transfer, which transfer is itself time-barred from pursuit under section 546 of the Bankruptcy Code. The key question this court is confronting, with regard to *In re Davis*, is whether the Fifth Circuit's *dicta* therein, indicating that section 502(d) "is intended to have the coercive effect of insuring compliance with *judicial orders*" (emphasis added) and, in another place, stating that section 502(d) "is triggered after a creditor has been afforded a reasonable time in which to turn over amounts *adjudicated* to belong to the estate" (emphasis added), is an indication that the Fifth Circuit would follow the minority view and hold that section 502(d) cannot be utilized unless there has already been an *adjudication* of liability in an avoidance action.

Turning to the factual context of *In re Davis*, it involved jointly administered Chapter 11 cases of an individual and some of the individual's affiliated companies. During the Chapter 11 cases, the Internal Revenue Service (the "IRS") sent notices to the debtors alleging that large amounts of prepetition taxes and penalties were owing by the debtors. The debtors then brought an adversary proceeding to resolve their liability to the IRS (actually, expanding the relief sought therein, to include issues involving some postpetition taxes that were also in dispute). It is unclear why, but the debtors' adversary proceeding was transferred to the Western District of Texas, San Antonio Bankruptcy Court to be tried, even though the debtors' bankruptcy cases were pending in the Southern District of Texas (hereinafter, the "San Antonio Tax Litigation").

---

67. *Id.* at 202–203.

68. *Id.* at 205.

69. *Campbell v. United States (In re Davis)*, 889 F.2d 658, 660 (5th Cir.1989).

70. *Id.* at 661. The third case within the Fifth Circuit that follows the majority view (*In re Disc. Family Boats of Tex.* from the Bankruptcy Court of the Eastern District of Texas) did not cite to *In re Davis*.

Next, meanwhile, the IRS filed a proof of claim (in the court where the debtors' bankruptcy cases were pending, in the Southern District of Texas) for amounts it believed were owed by the debtors. The IRS's proof of claim was amended several times, and the IRS also filed claims for postpetition taxes owed. Next, the disputes went to trial in the San Antonio Tax Litigation, and the debtors were largely victorious—with the court finding that the debtors were only liable for $84,000 of taxes that the debtors admitted were owing for the year 1972 (out of several millions that the IRS had asserted were owing over numerous years). The IRS appealed this judgment to the district court for the Western District of Texas. Meanwhile, during that appeal, the debtors obtained confirmation of a Chapter 11 plan that contemplated a liquidating trustee would hold assets, liquidate them, and disburse proceeds to creditors (including the IRS). The order confirming the plan contemplated that no distributions would be made to creditors until the San Antonio Tax Litigation had been resolved.

Meanwhile, even though the San Antonio Tax Litigation was still pending, the liquidating trustee filed yet another action in the bankruptcy court for the Southern District of Texas seeking that the IRS turn over (i.e., pay over) to the postconfirmation estate some $396,736.49 worth of tax refunds owing to the debtors (and also seeking a declaratory judgment that the IRS was not entitled to continue to retain the refunds during the pendency of the San Antonio Tax Litigation regarding their claims against the debtors). One of the arguments made by the liquidating trustee was that, pursuant to section 502(d) of the

Bankruptcy Code, all of the still-pending proofs of claim of the IRS should be disallowed, *due to the IRS's failure to surrender these tax refunds allegedly owing*—which (the liquidating trustee argued) the IRS should have surrendered after entry of the bankruptcy court order in the San Antonio Tax Litigation (notwithstanding the pending appeal) [71] Hearings in the liquidating trustee's turnover action were continued many times by the bankruptcy court in the Southern District of Texas, pending resolution of the appeal in San Antonio. [72]

Finally, several years later, the district court in San Antonio affirmed the bankruptcy court in the San Antonio Tax Litigation. After an initial appeal to the Fifth Circuit, the IRS stipulated to a dismissal and began meeting with the liquidating trustee to attempt to come to an agreement regarding the amount of refunds to be turned over to the liquidating trustee. Then, a mere five days after the stipulation of dismissal, the district court for the Southern District of Texas (District Judge Lynn Hughes—it is unclear why the matter was heard by him and not the bankruptcy court) disallowed a very large portion of the IRS's asserted claims ($1,397,568 to be exact—consisting of all the interest and delinquent penalties the IRS was asserting on delinquent taxes) for the IRS's failure to turn over the refunds that had been in dispute. [73] An appeal later was filed to the Fifth Circuit.

On appeal, the Fifth Circuit held that the key question was *whether section 502(d) applied to the fact pattern and the court held no, it did not.* The Fifth Circuit first discussed the IRS's right to setoff under the Tax Code and section 553 of the Bankruptcy Code, and seemed to

71. *Id.* at 660.

72. *Id.*

73. *Id.* at 660–61.

think these provisions complicated the whole analysis. [74] In any event, the specific question on appeal was a somewhat unusual mixed question of fact and law—whether the IRS was unreasonable and should have essentially been *penalized under the guise of section 502(d)* for not having already refunded the amounts it owed to the debtors when it, instead, had been waiting until the final determination in the San Antonio Tax Litigation. The district court had held that the IRS unreasonably delayed in turning over the tax refunds owed to the debtor (again, only five days had elapsed between the time that the IRS had dismissed the Fifth Circuit appeal of the San Antonio Tax Litigation and the hearing before Judge Hughes at which the IRS's claims were partially disallowed under section 502(d)). Judge Hughes held section 502(d) should be applied to disallow a substantial portion of the IRS's pending claims against the estate. The Fifth Circuit held that this was error—to use section 502(d) in a punitive way. [75]

The Fifth Circuit in reaching its holding, engaged in an extremely brief discussion of section 502(d) and the policy behind it. Specifically, the Fifth Circuit stated that "the section is intended to have the coercive effect of insuring compliance with judicial orders." [76] The court further stated that "Section 502(d) should be used when something more than a gentle influence is needed, but penalization for appealing liability when the debtor [IRS] stood ready, willing, and able is not the proper application of section 502(d). This section is designed to be triggered after a creditor has been afforded a reasonable time in which to turn over amounts adjudicated to belong to the bankruptcy estate." [77] In summary,

in *In re Davis*, the Fifth Circuit surmised that the purpose behind section 502(d) is to assure that a creditor will not be allowed to assert a claim against the estate without first paying his own debts to the estate, but not to penalize the creditor before expiration of a reasonable time after a final determination of liability.

After a review of the facts in *In re Davis*, one thing is clear: The Fifth Circuit did not believe section 502(d) should be used punitively to require a creditor to comply with a previous order when: (a) the IRS had been appealing liability under that order; (b) the appeal might impact setoff rights and refunds owing; and (c) at the time section 502(d) was applied (punitively at that), the IRS's appeal had only terminated five days earlier. The IRS, at that point, could not be considered to have unreasonably delayed. Bottom line, the Fifth Circuit simply opined that there had been a wrong utilization of section 502(d). What is not clear is whether the Fifth Circuit literally meant, when discussing the policy underlying section 502(d), that there need always be a *prior order requiring a turnover* to utilize section 502(d). If this literally applies, then a common practice in the bankruptcy world is indefensible. Specifically, it is commonplace for bankruptcy trustees to object to claims under section 502(d) in the same adversary proceeding in which they sue for avoidance of an alleged preferential transfer. And the trustee will not pay on the defendant's proof of claim unless and until the preference is turned over and/or the suit is resolved. Is this an erroneous practice, under *In re Davis*? This court thinks not. But if reading *In re Davis* literally, one might conclude yes. The difference in this

74. *Id.* at 661.

75. *Id.* at 662.

76. *Id.* at 661.

77. *Id.* at 662.

hypothetical involving the commonplace practice of the bankruptcy trustee—one might argue—is that, in many cases in which the bankruptcy trustee utilizes section 502(d) in this way, *the underlying avoidance action is not time-barred* so at least an adjudication of liability on the preference and, ultimately, an order for turnover *is possible.* But the point is, the Fifth Circuit was not presented with these facts of this commonplace trustee practice, nor the facts of the case at bar, in *In re Davis* when it discussed not utilizing section 502(d) in a punitive way before expiration of a reasonable time after adjudication of liability. In *In re Davis*, the Fifth Circuit was presented with a unique situation where section 502(d) had essentially been used as a tool to sanction—and the underlying behavior had not even seemed that unreasonable, under the circumstances, to the Fifth Circuit. Finally, it is also worth noting that *In re Davis* contains a discussion of the "equality of distribution" policy underlying section 502(d) that is the same reasoning employed by courts adhering to the majority view.[78] Thus, it could possibly even be argued that *In re Davis* provides support for following the majority view.

With all deference to the Fifth Circuit, this court deems it significant that the Fifth Circuit was not confronted with facts anything like this case in *In re Davis,* and this court is not convinced that the Fifth Circuit would depart from the "majority view" when confronted with these facts.

### v. Statutes of Limitations versus Statutes of Repose

As mentioned above, in *In re IFS Fin Corp.*, Judge Isgur addressed whether a trustee could use section 502(d) of the Bankruptcy Code defensively to disallow a claim, where the claimant had been a transferee of a transfer that might have been avoidable under a state law fraudulent conveyance statute (*i.e.*, section 24 of TUFTA). Judge Isgur believed that, when operating under TUFTA (even in a bankruptcy case) the TUFTA limitations periods should apply not section 546 of the Bankruptcy Code. In examining the time deadlines in TUFTA (*i.e.*, section 24.010 of TUFTA, entitled "Extinguishment of Cause of Action"), Judge Isgur concluded that section 24.010 operates as a statute of repose, rather than a statute of limitations, and *extinguishes* a fraudulent transfer cause of action that is not brought within four years of the transfer.[79] Moreover, the court further elaborated on the importance of distinguishing when a statute is a statute of repose versus a statute of limitations:

> A statute of limitations is a procedural device operating as a defense to limit the remedy available from an existing cause of action; a statute of repose creates a substantive right to be free from liability after a legislatively determined period ... While statutes of limitations operate to bar enforcement of a right, a statute of repose takes away the right altogether.[80]

**78.** Specifically, the Fifth Circuit stated that "Section 502(d) is designed to assure an equality of distribution of the assets of the bankruptcy estate not create penalties for asserting a setoff right. Bankruptcy is the area most likely to require a right to postpone payment until final adjudication of liability, otherwise the right to setoff would be worthy of little more than the book in which it is found." *Id.* at 662 (citing *Katchen v. Landy,*

382 U.S. 323, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966)).

**79.** *GMAC Mortgage, LLC v. Blitz Holdings Corp. (In re IFS Fin. Corp.),* Adv. No. 08–03047, 2008 WL 4533713, at *2 (Bankr. S.D.Tex. Oct. 2, 2008).

**80.** *Id.*

This court agrees with Judge Isgur, that section 24.010 of TUFTA operates as a statute of repose. Statutes of repose are jurisdictional in nature. They operate as an absolute bar on a plaintiff's ability to bring suit when the time thereunder has expired. A statute of repose is, therefore, sometimes referred to as a "jurisdictional bar."[81]

But this court is not taking into consideration the effect of a statute of repose. Rather, section 546(a)(1) of the Bankruptcy Code (which this court deems applicable in the case at bar) is without a doubt a statute of limitations. The Fifth Circuit in *McFarland v. Leyh (In re Tex. Gen. Petroleum Corp.)*, 52 F.3d 1330, 1337–38 (5th Cir.1995) has stated that section 546 of the Bankruptcy Code operates as a statute of limitations that can be waived and not as a statute of repose. Additionally, a clear majority of courts hold that 546(a) is a true statute of limitations and does not serve as a jurisdictional bar.[82] To be clear, a statute of limitations, unlike a statute of re-

pose, can be extended by agreement, tolled, waived, or the subject of estoppel.

Turning back to some of the earlier analysis herein, the "minority view" courts tend to place great importance on the usage of the word *"avoidable"* in section 502(d) and opine that this means *"actually avoidable"* and a transfer that would be time-barred under section 546 would **not** be *"actually avoidable"*—in other words, the transfer may have, at one time, been hypothetically avoidable. But now it cannot because of section 546. But is this really correct? Since section 546 is a non-jurisdictional statute of limitations, rather than a statute of repose, isn't a voidable transfer, as defined under sections 547 or 548, always going to be avoidable (albeit, subject to the affirmative defense of statute of limitations, under section 546—which may or may not be successfully argued, and could be waived or estopped somehow)? Courts have not tended to focus on this. But this court thinks this is significant. If section 546 were worded as a statute of repose, this court might agree

81. *Marsh v. Levy (In re Levy)*, 416 B.R. 1, 7 (Bankr.D.Mass.2009).

82. *IBT Int'l Inc. v. Northern (In re Int'l Admin., Servs., Inc.)*, 408 F.3d 689, 699 (11th Cir.2005) (a bankruptcy court has the discretion to extend the filing period for an adversary proceeding under§ 546(a)); *Pugh v. Brook (In re Pugh)*, 158 F.3d 530, 538 (11th Cir.1998) (§ 546(a) is a true statute of limitations that can be waived); *Jobin v. Boryla (In re M & L Bus. Mach. Co. Inc.)*, 75 F.3d 586, 591 (10th Cir.1996) (§ 546(a) is subject to the doctrine of equitable tolling); *Commercial Fin. Serv., Inc. v. Temple (In re Commercial Fin. Serv. Inc.)*, 294 B.R. 164, 173–75 (Bankr. N.D.Okla.2003) (ruling that the statute of limitations in § 546(a) may be voluntarily waived by the parties); *Brook v. Alphamed Pharm. Corp. (In re J & D Scis., Inc.)*, 335 B.R. 791, 797 (Bankr.M.D.Fla.2006) (stating that the limitations period under§ 546(a)(1) is a true statute of limitations and subject to the doctrines of waiver, equitable tolling and equita-

ble estoppel); *Moglia v. Inland Plywood Co. (In re Outboard Marine Corp.)*, 299 B.R. 488, 496–97 (Bankr.N.D.Ill.2003) (stating that the clear weight of recent authority bolsters the conclusion that § 546(a) is a true statute of limitations that can be extended by the parties, waived, or equitably tolled); *Pryor v. Rodriguez (In re Rodriguez)*, 283 B.R. 112, 120 (Bankr.E.D.N.Y.2001) (§ 546(a) is a statute of limitations which can be extended by agreement of the parties and is subject to equitable considerations); *Iron–Oak Supply Corp. v. Nibco, Inc. (In re Iron–Oak Supply Corp.)*, 162 B.R. 301, 307 (Bankr.E.D.Cal.1993) (rejecting "statute of repose" argument); *Brandt v. Gelardi (In re Shape, Inc.)*, 138 B.R. 334, 337 (Bankr.D.Me.1992) (stating that § 546(a) is a true statute of limitations which may be extended by party agreement and is subject to equitable estoppel); *see also* 5 Collier on Bankruptcy ¶ 546.02[4], p. 546–19 (16th ed.2013) ("if the defense is not timely asserted, a defendant may waive its statute of limitations defense under section 546(a)").

with the minority view courts. But, again, it is not.

### vi. *The Defensive Use of Time–Barred Claims Outside of the Bankruptcy World, Generally*

Finally, the court finds it significant that the defensive use of time-barred claims is not uncommon outside of the bankruptcy context, including under Texas law, and is generally held to be permissible.

By way of example, section 16.069(a) of the Texas Civil Practice and Remedies Code provides that if "a counterclaim or cross claim arises out of the same transaction or occurrence that is the basis of an action, a party to the action may file the counterclaim or cross claim *even though as a separate action it would be barred by the limitation on the date the party's answer is required*."[83] Then, section 16.069(b) adds that the counterclaim or cross claim must be filed within 30 days of when the answer is due.[84] This concept appears to be well-grounded in long standing Texas jurisprudence. Specifically, there appear to be many cases from the Texas state courts that have allowed the assertion of time-barred claims in a defensive manner, when pleaded only to defeat a plaintiff's claim—so long as plaintiff's main action was timely.[85] For example, in the case of *Cooper v. RepublicBank Garland*,[86] the Dallas Court of Appeals held that, although a four-year statute of limitations barred certain consumers from recovering funds that they had previously paid to a bank under an installment contract, this did not bar the consumers from asserting any defenses arising out of the sale and financing that was the subject of the contract that might entitle them to offset against, or cancel, the remaining balance of the installment contract. In *Cooper*, the court cited numerous old opinions including one from the former Texas Commission of Appeals that stated:

> It is the law of this state that where the subject-matter of a defense interposed by the defendant constitutes an independent cause of action which does not go to the foundation of the plaintiff's demand, it cannot effect a reduction of the amount of the plaintiff's recovery except by way of setoff, and the statutes of limitation are available to the plaintiff in respect to such defense. [Citations omitted.] On the other hand, if the subject-matter of the defense be of an intrinsically defensive nature, which, if given effect, will operate merely as a negation of the plaintiff's asserted right to recover, or in abatement, either wholly or partially, of the amount claimed, the statute of limitations does not apply.[87]

Texas courts have elaborated that this "rule" that time-barred claims can be raised defensively (at least where the claims arise out of the same foundation or transaction as the plaintiff's claim) rests upon sound policy considerations:

> Limitation is applicable to the remedy and not the right. The right, as distin-

**83.** *See* Tex. Civ. Prac. & Rem. Code § 16.069(a) (emphasis added).

**84.** *See* Tex. Civ. Prac. & Rem. Code § 16.069(b).

**85.** *See, e.g., Garza v. Allied Fin. Co.*, 566 S.W.2d 57 (Tex.Civ.App.—Corpus Christi 1978, no writ) (where borrower's recoupment claim involved the same transaction which resulted in note upon which plaintiff sought to recover, principles of recoupment applied to allow claim, even though claim would have been barred by limitations if asserted as a separate cause).

**86.** 696 S.W.2d 629 (Tex.App.—Dallas 1985, no writ).

**87.** *Id.* at 634 (citing *Morriss–Buick Co. v. Davis*, 127 Tex. 41, 91 S.W.2d 313, 314 (1936)).

guished from the remedy, is often available in equity as a defense, when the remedy for its enforcement would be barred, if asserted affirmatively in a legal action.[88]

Sometimes defensive pleading of time-barred claims has been allowed in the bankruptcy context when the party asserting the "defense" is actually a plaintiff in an adversary proceeding—such as in the case at bar. For example, in *Coxson v. Commonwealth Mortg. Co. of Am., L.P.,*[89] joint chapter 13 debtors had filed an adversary proceeding against their home lender in their bankruptcy case, in response to the lender's effort to foreclose during the case, arguing violations of Texas usury laws and violations of the Truth in Lending Act, 15 U.S.C. § 1601 et seq. ("TILA"). On appeal, the Fifth Circuit held that the otherwise-expired statute of limitations applicable under TILA did not bar the debtors' claims, as the debtors' action was essentially filed in response to the lender's proof of claim and, thus, was in the nature of a defensive recoupment action and such defensive actions are never time-barred.[90] Similarly in *Johnson v. Nat'l City Mortgage Co.,*[91] the chapter 13 debtors were attempting in an adversary proceeding to negate a lender's lien on their homestead, on the grounds that the lien was obtained in violation of the Texas Constitution. Citing to section 16.069(a) of the Texas Civil Practice and Remedies Code, the court held that this was, in essence, a timely filed objection to a secured proof of claim and was permissible—despite the expiration of the limitations period under Texas law to bring the claim affirmatively.[92]

Similar to the above-cited authority, here, although the Trustee is postured as the plaintiff in the Adversary Proceeding, his claims are actually in the nature of counterclaims to the Defendant's Claim.[93] Thus, under a section 16.069 analysis, and applying Texas state court jurisprudence by analogy, the Trustee would be viewed as the defendant for purposes of allowing his otherwise time-limited avoidance claims to be brought defensively.

## F. Conclusion

 In summary, this court ends this Proustian-like mental journey[94] by concluding that the Fifth Circuit's *In re Davis* is not dispositive on the issue before the court. Taking into consideration the vari-

88. *Id.* (citing *Shaw v. First State Bank,* 13 S.W.2d 133, 137 (Tex.Civ.App.—Fort Worth 1928, no writ).

89. 43 F.3d 189, 194 (5th Cir.1995).

90. *Id.*

91. Adv. No. 08–4119, 2009 WL 2982783, at *2–4 (Bankr.E.D.Tex. Sept. 11, 2009).

92. Adv. No. 08–4119, 2009 WL 2982783, at *2–4 (Bankr.E.D.Tex. Sept. 11, 2009).

93. *Simmons v. Savell (In re Simmons),* 765 F.2d 547, 552 (5th Cir.1985) (the filing of a proof of claim is analogous to the filing of a complaint in a civil action, with the bankrupt's objection the same as an answer); *Johnson,* 2009 WL 2982783 at *2–4.

94. This is a reference, of course, to Marcel Proust (July 10, 1871-November 18, 1922), the French novelist of In Search of Lost Time fame (who has been aptly described as an author who was "interested in minutiae because life...is seldom about things, but about our impression of things, not about fact, but about the interpretation of facts... Everything is elusive...because nothing is ever certain.") Andre Aciman, WHY ALL THE FUSS ABOUT PROUST?, Wall Street Journal, Oct. 18, 2013. (This seems like a fitting reference due to both the stream-of-consciousness nature of parts of this opinion, and since Proust, like much of this opinion, explores the irrecoverability—and possible consequences—of time lost... Okay, perhaps this is stretching a bit for a literary reference).

ous arguments for both the majority and minority views, as well as the fact that (a) section 546 is not jurisdictional in nature (and is waivable); and (b) the defensive use of time-barred claims is not uncommon or impermissible outside of the bankruptcy context, including under Texas law,[95] this court has determined that the Trustee can utilize section 502(d) defensively to attempt to disallow the Defendant's Claim even though the section 546(a) statute of limitations period has already passed. Perhaps most significant of all is that there appears to be a clear majority view, expressed by at least four circuit courts of appeals, that a trustee can seek to disallow a claim under section 502(d) of the Bankruptcy Code even where the statute of limitations to bring an avoidance action under the Bankruptcy Code has passed. In light of this clear majority, the court is hard pressed to deviate unless and until there is some binding or compelling case law to the contrary.

In sports, there is a saying "that the best offense is often a good defense." Here, while the Trustee's offensive tactics (*i.e.*, Counts 1–4 of the Complaint, and also Count 6, subject to possible amendment) have proved unsuccessful, the Trustee's defensive use of section 502(d) of the Bankruptcy Code to disallow the Defendant's Claim as set forth in Count 5 of the Complaint remains a viable claim. Accordingly, it is

**ORDERED** that the Motion to Dismiss is **GRANTED** as to Counts 1–4 of the Complaint; it is further

**ORDERED** that the Motion to Dismiss is **GRANTED** as to Count 6 of the Complaint, without prejudice to the Trustee amending the Complaint within 30 days of the entry of this Memorandum Opinion

and Order in accordance with the court's ruling; and it is further

**ORDERED** that the Motion to Dismiss is **DENIED** as to Count 5 of the Complaint.

---

**95.** *See* TEX. CIV. PRAC. & REM. CODE § 16.069(a) & (b).